# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID ELKINS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-12-241-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant David Elkins requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 27, 1971, and was thirty-nine years old at the time of the administrative hearing (Tr. 36). He completed the tenth grade and has worked as a network technician, microcomputer support specialist and help-desk technician (Tr. 25). The claimant alleges that he has been unable to work since July 29, 2008 because of a back injury and fibromyalgia (Tr. 167).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 6, 2008 (Tr. 17). His applications were denied. ALJ Trace Baldwin conducted an administrative hearing and found the claimant not disabled in a written opinion dated November 30, 2010 (Tr. 17-27). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of appeal. 20 C.F.R. §§ 404.981; 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a); 416.967(a), limited to performing simple and some complex tasks and avoiding working with the general public (Tr. 21). The ALJ found that although the claimant could not return to any past relevant work, he was nevertheless not disabled because there was other work he could perform, *i. e.*, final assembler and bench hand (Tr. 26).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly analyze his fibromyalgia at step two; (ii) by failing to properly analyze his credibility; (iii) by failing to properly analyze his RFC at step four; and, (iv) by failing to properly analyze the medical opinion of consultative examiner Dr. Terry Kilgore, M.D. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly analyze Dr. Kilgore's opinion.

Dr. Kilgore performed a physical examination on the claimant (Tr. 289-97). The claimant reported generalized pain in his lower back, hips, knees, elbows, hands, and shoulders and a strong family history of fibromyalgia (Tr. 291). Upon examination, Dr. Kilgore noted that the claimant had painful heel and toe walking in the joints of his lower extremities and back (Tr. 293). While there was no redness, swelling, or evidence of inflammation in his joints, the claimant "complained of pain in all joints, including hands,

-4-

wrists, elbows, shoulders, ankles and knees[,]" and he had pain during straight leg raising at 30 degrees (Tr. 293). Dr. Kilgore noted that the claimant was "massively obese" and was positive for 14 of 18 tender points for fibromyalgia (Tr. 289, 293). The claimant had a reduced range of motion in the joints of his hands, wrists, shoulders, and elbows (Tr. 294-95). In addition, the range of motion in his back was reduced, he had weak heel and toe walking, and he had positive straight leg raise tests in both the sitting and supine positions (Tr. 296-97).

On February 25, 2009, agency physician Dr. Kenneth Wainner, M.D. reviewed the claimant's records and completed a Physical Residual Functional Capacity Assessment. He listed the claimant's primary diagnosis as obesity and opined that the claimant could occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds, and stand, walk, and/or sit for six hours in an eight-hour workday (Tr. 281-82).

State agency physician Dr. Theresa Horton, Ph.D. examined the claimant for his mental status on May 26, 2009 (r. 308-312). She found the claimant to be predominately depressed and diagnosed him with early onset dysthymia, major depressive disorder, recurrent, moderate, and avoidant personality traits (Tr. 311). Dr. Horton concluded that the claimant appeared "capable of understanding, remembering and managing simple and complex instructions and tasks while adjusting into occupational and social settings" but that he would benefit from counseling (Tr. 311).

Agency physician Dr. Dorothy Millican-Wynn, Ph.D. reviewed the claimant's records and completed a Psychiatric Review Technique (PRT) form on June 3, 2009. She

found that the claimant suffered from depressive syndrome characterized by anhedonia per pervasive loss of interest in almost all activities, sleep disturbance, and difficulty concentrating or thinking (Tr. 320). Dr. Millican-Wynn found that the claimant had moderate limitations in his activities of daily living and maintaining social functioning and mild limitations in maintaining concentration, persistence, or pace (Tr. 327). Dr. Millican-Wynn also completed a Mental Residual Functional Capacity Assessment in which she opined that the claimant was moderately limited in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions and markedly limited in the ability to interact appropriately with the general public (Tr. 314).

Social Security Ruling 96-6p indicates an ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. Unlike medical opinions from a treating physician, an opinion from an agency physician is not entitled to special deference but must be evaluated for weight under the factors set forth in 20 C.F.R. § 416.927. *See* 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive . . . [W]e consider all of the following factors in deciding the weight we give to any medical opinion."). The relevant factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the

record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). While an ALJ is not bound by an opinion from a state agency physician, he cannot ignore it and must explain the weight he decides to give it in his decision. *Id*.

The ALJ discussed Dr. Kilgore's findings as to the claimant's mental status but apparently rejected them without analyzing the factors set out in factors set out in 20 C.F.R. §§ 404.1527; 416.927. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must . . . consider a series of specific factors in determining what weight to give any medical opinion."), *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). Indeed, the ALJ appears to have rejected Dr. Kilgore's findings based upon speculation that the claimant was faking or exaggerating his symptoms. *See, e .g., Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy."), *citing McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make

speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.") [emphasis in original]. For example, the ALJ criticized Dr. Kilgore's finding concerning the claimant's range of motion, stating that "[t]he claimant evidenced decreased range of motion in every joint in his body, including the finders, which is highly unlikely in an individual of the claimant's age, and appears implausible" (Tr. 23), and his finding concerning the claimant's results on the fibromyalgia exam, *i. e.*, that the claimant complained of 14 of 18 positive points for fibromyalgia (Tr. 23). Such analysis of Dr. Kilgore's findings was clearly deficient under the applicable standards in 20 C.F.R. §§ 404.1527; 416.927, and the decision of the Commissioner should therefore be reversed and the case remanded to the ALJ for a proper analysis.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma